# Harvey, Appellant, *v.* Erie Railroad Company.

*Negligence—Railroads—"Stop, look and listen"—Contributory negligence —Safety gates.*

The duty of a traveler on a highway to continue to look as he approaches a grade crossing is not performed by looking in one direction when he can see in both.

In an action against a railroad company to recover damages for personal injuries it appeared that plaintiff while riding on a one-horse dray on a narrow street, stopped, looked and listened when within eighteen or twenty feet of a railroad crossing with which he was familiar.   At this place he could see east 250 or 300 feet in the direction from which a train was approaching.   The view of the tracks to the east extended as he approached them and at a distance of eight feet from them, he could have seen east for more than 1,000 feet.   He drove on without looking again to the east until his horse was on the first track, when he saw a train 100 feet from him running at the rate of twelve or fifteen miles an hour.   About 200 feet west of this crossing there was a crossing at which there were safety gates,

the tops of which could be seen over the houses on the west side of the street. These gates were up when the plaintiff stopped. When he started to cross the tracks he looked at them and continued to look at them as he proceeded, relying on the action of the watchman at that crossing to notify him of danger. *Held*, that the plaintiff was guilty of contributory negligence, and that a nonsuit was properly entered.

Argued Oct. 12, 1904. Appeal, No. 2, Oct. T., 1903, by plaintiff, from order of C. P. Venango Co., Jan. T., 1903, No. 39, refusing to take off nonsuit in case of Scott Harvey by his next friend, Thomas B. Harvey v. Erie Railroad Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CRISWELL, P. J.

The facts appear by the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*Edmond C. Breene*, and *William J. Breene*, for appellant, cited: Davidson v. Ry. Co., 179 Pa. 227 ; Callahan v. Traction Co., 184 Pa. 425; McCusker v. Penna. R. R. Co., 198 Pa. 540 ; Doud v. Delaware, etc., R. R. Co., 203 Pa. 227 ; Bard v. Phila. & Reading Ry. Co., 199 Pa. 94; Newman v. Del., Lack. & W. R. R. Co., 203 Pa. 530.

*W. H. Forbes*, with him *J. S. Carmichael*, for appellee, cited: Blight v. R. R. Co., 143 Pa. 10 ; Carroll v. Penna. R. R. Co., 12 W. N. C. 348 ; Moore v. R. R. Co., 108 Pa. 349 ; Penna. R. R. Co. v. Bell, 122 Pa. 58 ; Marland v. R. R. Co., 123 Pa. 487 ; Myers v. B. & O. R. R. Co., 150 Pa. 386.

OPINION BY MR. JUSTICE FELL, December 31, 1904 :

The plaintiff, riding on a one-horse dray on a narrow street, stopped, looked and listened when within eighteen or twenty feet of a railroad crossing with which he was familiar. At this place he could see east 250 or 300 feet in the direction from which a train was approaching. The view of the tracks to the east extended as he approached them and at a distance of eight feet from them he could have seen east for more than 1,000 feet.

He drove on without looking again to the east until his horse was on the first track, when he saw a train 100 feet from him running at the rate of twelve or fifteen miles an hour. About 200 feet west of this crossing there was a crossing at which there were safety gates, the tops of which could be seen over the houses on the west side of the street. These gates were up when the plaintiff stopped. When he started to cross the tracks he looked at them and continued to look at them as he proceeded, relying on the action of the watchman at that crossing to notify him of danger.

It is evident from the plaintiff's testimony that he drove in front of a moving train which he either saw or could have seen before placing himself in peril. He could have seen it before he started to cross and he could have seen it as he approached the tracks. The duty to continue to look as he approached the crossing was not performed by looking in one direction when he could see in both: Gangawer v. Phila. & Reading Railroad Co., 168 Pa. 265. The fact that the safety gates were up at another crossing may have given him some assurance of safety but any reliance upon them as a warning was at his own risk. They were not intended to warn anyone at this crossing. There might be no occasion to lower them at all if no one was on the street where they were situated, and there was no duty to lower them when a train was coming from the east in time to warn travelers at a crossing 200 feet distant.

The judgment is affirmed.